HAMILTON|CLARKE LLP.

MANAGING PARTNERS
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff, | : |
| - v. - | : 19-CR-00627 |
| | : |
| DARREN BROWN<br>Defendant | : |

---

## Darren Brown Presentencing Memorandum

*The never-ending War.*

    The wars fought in both Vietnam and Afghanistan have been the two longest wars fought in modern day United States History. The combine length of these wars (almost 20 years each) spans close to forty years. Forty years of loss, trauma, and death. Fortunately, these wars came to an end as both sides grew tired of the senseless loss. The loss of life, finances, and mental health was a cost too high to pay. Yet these two wars combined have eclipsed the loss fought in the real war- the war on drugs.

    Since 1971 the war on drugs has been fought throughout this country with a heavy concentration on inner city neighborhoods.  This war has produced pain, broken homes, and casualties from all sides. But unlike most wars where both sides ultimately see the fruitlessness in their efforts, this war has contributed to a spike in mass incarceration parallel to none in any advanced country. And what is probably the most unfortunate aspect of this war, it is the low-level drug dealers who fill courthouses and prisons across this country. It is incumbent that in the freest country in the world, we

HAMILTON|CLARKE LLP.

MANAGING PARTNERS
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

figure out the true root of the drug problem, as opposed to arresting and jailing low level sellers and users.

Darren Brown is charged with drug conspiracy; a drug conspiracy where he is personally took part in five drug sells. Five drug sales that totaled a combined weight of 1.37 grams. But, because he made those five sells with others from his neighborhood, he is guilty of conspiracy and the law requires he be held responsible for their actions as well. But was this law really intended for the Darren Browns of the world?

Darren's life and background is unfortunately a mirror of many who have come before this Court. Broken men, from broken homes, living in broken neighborhoods. Neighborhoods where the measure of success is purely superficial and frivolous, and often comes with paying the ultimate costs. Neighborhoods were opportunity, hope, and promise are scarce, but drugs and pain are abundant.

There is no denying that selling drugs is wrong, but often the punishment enacted for committing this offense has worse effects on the community than the crime itself. Poverty-stricken people are selling drugs to other poverty-stricken people and are often jailed leaving their families stuck in that same cycle of poverty. Their children are raised in broken homes, live in broken neighborhoods, and become broken men, resulting in generations of families coming through the justice system.

*"It is better to offer no excuse than a bad one."*

When initially meeting Darren, he would often tell defense counsel of his harsh upbringing, lack of love and support, and mental health illnesses. While these issues may have factored in the decisions Darren has made, he has come to realize that it is he, and he alone, that is responsible for his



MANAGING PARTNERS
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

decisions. In 1781, George Washington said in a letter to his niece, "it is better to offer no excuse, than a bad one." This statement is as powerful and true then as it is now. While Darren's mental health problems have attributed to a host of the troubles he has gotten into as a young man, he is prepared to accept responsibility for his actions and stands before this court not with an excuse, but with remorse. And while mental health should not be a crutch to excuse bad behavior, it does explain much of Darren's life story. Darren has suffered from untreated bipolar disorder from a young age. According to Darren, "for years I wondered why I wasn't like the other kids" and admits to consistently feeling sad, worthless, and his life meaningless. These feelings left Darren believing that nothing mattered; no matter how hard he tried, he would never be able to "cut it." And unfortunately, this untreated hopeless mentality has led to a life of bad decision making. But it is not too late for him.

*A departure from the advisory guidelines is not only warranted, but necessary.*

Darren's advisory Guidelines range, like in most narcotics cases, is exclusively driven by drug amount as required by § 2D1.1; yet the drug amount enhancements were not the result of any practical data prompting several Courts to decline to strictly follow to them when sentencing low level drug offenders. The Sentencing Commission takes a purely mathematical approach to attempt to reach an objective formula when sentencing for drug offenses. Because the Commission failed to explain or justify its reasons for believing it is necessary to place so much weight on these factors, courts have great discretion to disagree with the sentencing enhancements of the drug tables in § 2D1.1 and depart from the Guidelines based purely upon "policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."[1] As Judge

---

[1] *See Spears v. United States,* 129 S.Ct. 840, 843 (2009)



MANAGING PARTNERS
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

Gleeson once stated "The flaw is simply stated: the Guidelines ranges for drug trafficking offenses are not based on empirical data, Commission expertise, or the actual culpability of defendants. If they were, they would be much less severe, and judges would respect them more. Instead, they are driven by drug type and quantity, which are poor proxies for culpability."[2] Therefore, in *Diaz*, the Court held that it would not ignore the Guidelines range, but it would "place almost no weight on it because of my fundamental policy disagreement with the offense Guideline that produces it."[3]

Accordingly, we implore this Court to follow the lead of those Courts that have identified that the Guidelines application to low-level drug offenders creates advisory guideline ranges that are excessive and not proportion to the individual offender and are, therefore, not sentences that are sufficient but not greater than necessary. As Judge Gleeson concluded in *Diaz*, while imprisonment may be necessary, courts should not lose sight of the fact that the extra months and years that the Guidelines' drug enhancements matter: "children grow up; loved one's drift away; employment opportunities fade; parents die."[4]

*Surviving while Incarcerated during Covid*

It is no surprise the extraordinarily harsh and sometimes inhumane conditions prisoners have had to undergo while housed in the MDC due to Covid. Conditions for inmates have been so horrifying, The Honorable Judge Paul Oetken, recently sentenced a defendant to time-served who had a sentencing guideline range of 78-97 months stating, "The defendant has already served 24 months under conditions that have been extraordinarily harsh. And I do believe that because it's been harsher

---

[2] *United States v. Diaz*, No. 11 Cr. 821 (JG), 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013)
[3] *Id.*
[4] *Id.* at 18.

MANAGING PARTNERS
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

HAMILTON|CLARKE LLP.

than a usual period that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served."[5]

For inmates in the MDC, most of the time has been spent in lockdown conditions 23 hours a day "basically like solitary confinement conditions with no access to visitors for most of that time and virtually limited programming."[6] Darren and other inmates did not have heat, adequate clothing, or blankets for days as temperatures dropped to 2 degrees. Reviewing discovery has been a nightmare, while having a meaningful conversation with your attorney has been even worse. Even basic hygiene was put to a halt as prisoners were not allowed to shower for days at a time. But the straw that would break the strongest back is the lack of contact from loved ones. Darren has five children. Five children who's faces he didn't see, or hugs felt, in over a year. Children who miss him and would love to have their father home. (Please see Exhibit A). It is difficult to comprehend not being able to see your children, or hug your loved ones, for over a year. For generations jail visits have been the main, if the not the only thing, that has kept inmate's hopeful; and while jail is not designed to be enjoyable, it should not be horrific.

*Conclusion*

While Darren has served jail time in the past, this has been the longest he has ever been incarcerated. This time has forced Darren to realize not only the seriousness of the conduct, but the consequences of his actions. While the guidelines may lay out what the discretionary time range is for specific offenses, it can never calculate the true price of that time. Time that is made up of hours, days,

---

[5] *United States v Daniel Gonzalez*, 18 CR 669
[6] *Id.*

www.HamiltonClarkeLLP.com        48 Wall Street, Suite 1100, New York, NY 10005        P. 212-729-0952

HAMILTON|CLARKE LLP.

MANAGING PARTNERS
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

months, and years of a human being's life. Time that is often wasted, and always lost.

The longer that time is spent becoming more socially disconnected to societal standards, the more difficult it becomes learning how to become a productive member of society, and the closer we become to producing a subsociety of institutionalized individuals. It has long been argued that lengthy sentences can constitute a form of "death by incarceration."[7] Social Scientists have longed viewed institutionalization as a form of "slow death" because even those who are released may suffer the after-effects of years spent behind bars.[8] "In other words, even those who don't die in prison may die, because of prison."[9]

We are in a unique place in history where our actions based on criminal justice reform today will dictate mass incarceration and reform in the future. Promoting respect for the law, while showing the law can also be compassionate, are not mutually exclusive terms. We can do both. Because while justice may be swift and stern, it is also empathetic, understanding, and hopeful. Darren is hopeful; his family is hopeful; defense counsel is hopeful. (Please see Exhibit B). We ask The Court to share in this hope.

There is hope for Darren because while incarcerated he spent his time bettering himself to adjust to societal norms and even when he knew there was a federal warrant for his arrest, he had the intestinal fortitude to surrender himself in this very building knowing surely, he would not walk out of the doors he walked in. (Please see Exhibit C). He did this because he is tired, and he wants to make a change. He did this because at a certain point in someone's life, it finally clicks.

It is because of this we humbly implore this Court to sentence Darren to sentence of thirty

---

[7] *Becoming Institutionalized: Incarceration and "Slow Death, Johanna Crane July 16, 2019.*
*https://items.ssrc.org/insights/becoming-institutionalized-incarceration-and-slow-death/*
[8] Id.
[9] Id.

www.HamiltonClarkeLLP.com          48 Wall Street, Suite 1100, New York, NY 10005          P. 212-729-0952



**MANAGING PARTNERS**
Phillip C. Hamilton, Esq.
Lance A. Clarke, Esq.

HAMILTON|CLARKE LLP.

months. A sentence of thirty months is one that would not only promote respect for the law, it is a sentence that is sufficient but not greater than necessary to achieve the true goals of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

*Lance A. Clarke*

Lance A. Clarke, Esq.